1  GARCIA RAINEY BLANK & BOWERBANK LLP
   A LIMITED LIABILITY PARTNERSHIP
2  NORMA V. GARCIA, Cal. Bar No. 223512
   ngarciaguillen@garciarainey.com
3  JEFFREY M. BLANK, Cal. Bar No. 217522
   jblank@garciarainey.com
4  695 Town Center Drive, Suite 700
   Costa Mesa, CA 92626
5  Telephone:   (714) 382-7000
   Facsimile:    (714) 784-0031
6
7  Attorneys for Plaintiffs
   Michael Chung-Hou Chiang and
   Agnes Shene Hwa Chin
8

9              UNITED STATES BANKRUPTCY COURT

10       CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

11

12  HOWARD WU                          **Case No.:** 2:21-bk-19480-ER
                                       Chapter 7
13              Debtor.
                                       Hon. Ernest M. Robles
14  _____

15  MICHAEL CHUNG-HOU CHIANG, an
    individual; and AGNES SHENE HWA    **Adv. Proceeding No.: 2:22-ap-01071-ER**
16  CHIN, an individual

17                      Plaintiffs,     **FIRST AMENDED ADVERSARY
                vs.                     COMPLAINT FOR DETERMINATION
18  HOWARD WU, an Individual            OF NON-DISCHARGEABILITY OF
                                        DEBT UNDER 11 U.S.C. §§ 523(a)(2)(A)
19                      Defendant       AND (a)(6)**

20

21

22

23

24

25

26

27

28

1

2      Plaintiffs Michael Chung-Hou Chiang ("Mr. Chiang") and Agnes Shene Hwa Chin

3  ("Ms. Chin") (together, "Plaintiffs") complain and allege as follows against Defendant

4  Howard Wu ("WU" or "Defendant") as follows:

5                                **JURSIDICTION AND VENUE**

6      1.      This Court has jurisdiction over this adversary proceeding pursuant to 28

7  U.S.C. §§ 1334, 157, and  11. U.S.C. § 523. This is a core proceeding pursuant to 28 U.S.C.

8  § 157.

9      2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409 in that the instant

10 proceeding is related to the Defendant's bankruptcy case which is still pending in this

11 District.

12     3.      This adversary proceeding is commenced pursuant to Rule 7001(6) of the

13 Federal Rules of Bankruptcy Procedure, 11 U.S.C. §§ 523(a)(2) and (a)(6), and any other

14 applicable section of the Bankruptcy Code or any other Rule of the Federal Rules of

15 Bankruptcy Procedure.

16

17                                     **THE PARTIES**

18     4.      On December 29, 2021 (the "Petition Date") Defendant Howard Wu filed for

19 Chapter 7 Bankruptcy in this District. The bankruptcy action is entitled In re Howard

20 Chorng Jeng Wu, Case No. 2:21-bk-19480-ER.

21     5.      Plaintiff Michael Chung-Hou Chiang, is an individual residing in Los

22 Angeles, California.

23     6.      Plaintiff Agnes Shene Hwa Chin, is an individual residing in Temple City,

24 California.

25     7.      Plaintiffs are informed and believe that Defendant Howard Wu (hereinafter,

26 "WU"), is an individual residing in the State of California, County of Los Angeles and

27 conducting business in the State of California, County of Los Angeles.

28

1

2 <u>**GENERAL ALLEGATIONS**</u>

3 **<u>UC Crenshaw</u>**

4    8.    On or about April 9, 2019, Mr. Chiang invested Three Hundred and Sixty

5 Thousand Dollars ($360,000.00) in UC CRENSHAW. UC CRENSHAW is the single

6 purpose limited liability company through which Defendant and his cohorts were going to

7 purchase the real property formerly known as 1027 Crenshaw Blvd., Los Angeles,

8 California 90019. Attached hereto as **<u>Exhibit A</u>** is a true and correct copy of Mr. Chiang's

9 Membership Interest Subscription Agreement ("UC Crenshaw Subscription Agreement")

10 for UC CRENSHAW.

11    9.    Mr. Chiang also executed an Operating Agreement ("UC Crenshaw

12 Operating Agreement") as part of his $360,000.00 investment in UC CRENSHAW.

13 Paragraph 1.14 of the UC Crenshaw Operating Agreement defines a "Capital Event" as the

14 sale or disposition of any of the Company's capital assets, the receipt of insurance and other

15 proceeds derived from involuntary conversion of Property, the receipt of proceeds from a

16 refinancing of Property, or a similar event with respect to Property or assets. Paragraph 1.51

17 defines "Property" to mean that certain property known as 1027 Crenshaw Blvd., Los

18 Angeles, CA, and any other tangible or intangible, real or personal property contributed to

19 or acquired or owned directly or indirectly by the Company. Attached hereto as **<u>Exhibit B</u>**

20 is a true and correct copy of the UC Crenshaw Operating Agreement.

21    10.    Paragraph 4.12 of the UC Crenshaw Operating Agreement further states that

22 all revenues or proceeds from a Capital Event or the dissolution of the Company shall be

23 distributed among the Members.

24    11.    Plaintiffs are informed and believe and on that basis allege that on or about

25 May 31, 2019, Defendant and his cohorts closed escrow on the Property.  Plaintiffs are

26 informed and believe and on that basis allege that unbeknownst to all investors in UC

27 CRENSHAW, including Mr. Chiang, on or about September 17, 2020, Defendant and his

28 associates secretly sold the Property to 1009 Crenshaw LP for Four Million Dollars

FIRST AMENDED ADVERSARY COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF
DEBT AGAINST HOWARD WU

1    ($4,000,000.00).

2    12.    Plaintiffs are informed and believe and on that basis allege that Defendant and

3    his associates kept the entirety of the $4,000,000.00 for themselves even though the sale of

4    the Property constituted a "Capital Event" under Paragraph 1.14 of the UC Crenshaw

5    Operating Agreement which required Defendant and his associates to distribute the

6    $4,000,000 amongst the UC CRENSHAW investors, including Mr. Chiang.

7    13.    On or about March 8, 2021, during a Zoom meeting with investors Defendant

8    represented to the UC CRENSHAW investors, including Mr. Chiang that the development

9    plans for the Property were ongoing including the drawing of architectural designs and

10    zoning plans. Plaintiffs are informed and believe and on that basis allege that at the time

11    these representations were made by Defendant, Defendant knew these representations to be

12    false and made said representations with the intent to deceive the UC CRENSHAW

13    investors including Mr. Chiang as at the time these representations were made on March 8,

14    2021, Defendants no longer owned the Property as a result of the sale to 1009 Crenshaw LP

15    back on September 17, 2020.

16    14.    Plaintiffs are informed and believe and on that basis allege that at the time

17    Defendant misrepresented to the UC CRENSHAW investors, including Mr. Chiang that UC

18    CRENSHAW still owned the Property, Defendant did so in order to defraud the UC

19    CRENSHAW investors, including Mr. Chiang out of the $4,000,000 sale proceeds the UC

20    CRENSHAW investors, including Mr. Chiang were entitled to under the UC Crenshaw

21    Operating Agreement.

22    15.    Plaintiffs are informed and believe and on that basis further allege that at the

23    time Defendant misrepresented to the UC CRENSHAW investors, including Mr. Chiang

24    that UC CRENSHAW still owned the Property, Defendant did so with the intent for him

25    and his cohorts to keep the $4,000,000 sale proceeds for themselves and in order to avoid

26    returning to the UC CRENSHAW investors, including Mr. Chiang their investment sums.

27    **UC Seattle**

28    16.    In or about January 2020, Defendant by and through Urban Commons, LLC

FIRST AMENDED ADVERSARY COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF
DEBT AGAINST HOWARD WU

("URBAN COMMONS"), a privately held real estate investment trust (REIT) management company, issued a private offering ("UC Seattle Offering") to investors seeking to raise Thirty Million Dollars ($30,000,000) in membership interest in Urban Commons 6th Ave Seattle, LLC ("UC SEATTLE"). UC SEATTLE is the single purpose limited liability company through which Defendant was going to purchase the real property known as Hilton Seattle, located at 1301 6th Avenue, Seattle, Washington ("Hilton Seattle"). A true and correct copy of the Membership Interest Subscription Agreement ("Subscription Agreement") for Plaintiffs are attached hereto as **Exhibits C and D.**

17.    As part of the UC Seattle Offering, Plaintiffs were provided with the following documents: (i) Letter of Intent to Purchase Hilton Seattle, (ii) Hilton Seattle Purchase and Sale Agreement, and (iii) the Subscription Agreement for UC SEATTLE. Based on the representations set forth in the Subscription Agreement, including but not limited to: (i) the purchase price for the Hilton Seattle will be deposited into an interest-bearing secure bank account,  (ii) all interest earned on such account will be used by UC SEATTLE to pay all costs and expenses (including, but not limited to, all legal, accounting and management costs and expenses) incurred in connection with this offering and the formation of UC Seattle, (iii) UC SEATTLE would obtain an acquisition loan in an approximate aggregate amount of approximately Seventy Million Dollars ($70,000,000.00) in order to acquire and refurbish the Hilton Seattle, (iv) in the event the subscription was terminated, the funds raised by UC SEATTLE would be returned to the investors, Plaintiffs each invested One Hundred and Fifty Thousand Dollars ($150,000.000) in UC SEATTLE for a total investment sum of Three Hundred Thousand Dollars ($300,000.)

18.    As part of their investment in UC SEATTLE, Plaintiffs each executed a Subscription Agreement and on July 10, 2020, Plaintiffs wired $300,000 to UC SEATTLE.

19.    The UC Seattle Subscription Agreement expressly stated that "the Company (UC Seattle) will not use or apply the purchase price until the Company has raised the necessary funds from this offering. The funds raised for the offerings will be used to invest

in an entity which shall acquire, own, operate, and eventually sell that certain property known as the Hilton Seattle, located at 1301 6th Avenue, Seattle, Washington (the "Property.")

20.    The UC Seattle Subscription Agreement further stated that: "(i) the purchase price will be deposited into an interest-bearing secure bank account and (ii) all interest earned on such account will be used by the Company to pay all costs and expenses (including, but not limited to, all legal, accounting and management costs and expenses) incurred in connection with this offering and the formation of the Company."

21.    The UC Seattle Subscription Agreement also stated that in the event the subscription were terminated, "all funds raised by the Company will be returned to the applicable investors, together with any interest remaining on such funds following the payment of all costs and expenses."

22.    The UC Seattle Subscription Agreement further stated that the Company would be obtaining acquisition loans in an approximate aggregate amount of approximately Seventy Million Dollars ($70,000,000.00) in order to acquire and refurbish the Property.

23.    Plaintiffs are informed and believe and therefore allege that to date, Defendant and his associates have not completed their offering for UC SEATTLE nor have Defendants raised the Thirty Million Dollars ($30,000,000) from the offering of membership interests in UC SEATTLE.

24.    Plaintiffs are informed and believe and therefore allege that to date, Defendant and his associates have not obtained a financing commitment for the acquisition loans in an approximate aggregate amount of Seventy Million Dollars ($70,000,000.00) in order to acquire and refurbish the Hilton Seattle.

25.    Plaintiffs are informed and believe and therefore allege that to date, Defendant and his associates have not acquired or refurbished the Hilton Seattle.

26.    In addition to executing the Subscription Agreement, Plaintiffs each also entered into an Investment Agreement with Defendant and his associates. The terms of the Investment Agreement stated that "Member shall receive a six percent (6%) guaranteed

preferred return per annum on Investment Capital ("Preferred Return"), to be paid each

Calendar Quarter at the rate of 1.5% each Calendar Quarter. "Preferred Return" means an

amount calculated like interest and accrued on the balance standing from time to time in

such Member's Investment Capital account at a simple interest rate equal to six percent

(6%) per annum, non-compounded.  "Calendar Quarter" shall mean each period of three (3)

consecutive calendar months commencing on the first day of January, April, July and

October of each Calendar Year.

27.    The Investment Agreement further stated, "Net profits of Company that

exceed 6% per annum will be distributed to the members of the Company on a pro rata basis

in accordance to the percentage of ownership interest as set forth in Exhibit A of the

Operating Agreement." Plaintiffs allege that to date; they have only received one (1)

Preferred Return payment each.

28.    During the marketing and solicitation of investments in the membership

interest of UC SEATTLE, Defendant did not disclose his relationship with, involvement in,

and/or ownership interest in EAGLEHT, which is the Singaporean REIT which was

supposed to buy UC SEATTLE upon UC SEATTLE's acquisition of the Hilton Seattle.

Plaintiffs are informed and believe and therefore allege that Defendant owns and/or owned

17% of the equity in EAGLEHT and was and/or is Chairman and Deputy Chairman,

respectively of the EAGLEHT board.

29.    Plaintiffs are informed and believe and therefore allege that at the time

Defendant issued the offering of membership interests in UC SEATTLE to Plaintiffs,

Defendant knew EAGLEHT was not performing well and failed to disclose this material

fact to Plaintiffs. Specifically, Defendant knew that EAGLEHT had defaulted on a Three

Hundred and Forty-One Million Dollar (US $341,000,000.00) facility loan. Importantly,

this default occurred in or about December 2019.

30.    Plaintiffs are informed and believe and therefore allege that at the time

Defendant issued the offering of membership interests in UC SEATTLE to Plaintiffs,

Defendant knew that trading of EAGLEHT SP was suspended. Notably, EAGLEHT SP is

the name under which shares of EAGLEHT were sold on the Singapore Stock Exchange. Plaintiffs are also informed and believe and therefore allege that Defendant holds and/or held shares of EAGLEHT SP as a result of his relationship, involvement and/or ownership interest in EAGLEHT.

31.    Further, Plaintiffs are informed and believe and therefore allege that at the time Defendant issued the offering of membership interests in UC SEATTLE, Defendant knew he and his associates were under investigation by the Monetary Authority of Singapore (MAS) and the Singapore Exchange for suspected breaches of disclosure requirements under Section 203 of the Singapore Securities and Futures Act, and breaches of regulations and listing rules in relation to EAGLEHT SP.

32.    Notably, nowhere in the documents provided to Plaintiffs as part of the UC Seattle Offering, including the Subscription Agreement and the Investment Agreement, did Defendant disclose his involvement with, connection to, and/or relationship with EAGLEHT. Nor did Defendant disclose in the documents provided to Plaintiffs as part of the UC Seattle Offering the financial trouble EAGLEHT was under, including failure to disclose that EAGLEHT had defaulted in its a Three Hundred and Forty-One Million Dollar (US $341,000,000.00) facility loan in or about December 2019. Nor did the UC Seattle Offering documents provided to Plaintiffs disclose anything about EAGLEHT SP's troubles with the Monetary Authority of Singapore (MAS) and the Singapore Exchange and suspension of EAGLEHT SP's shares on the Singapore Exchange. Indeed, none of the aforementioned disclosures were made to Plaintiffs prior to them investing in UC SEATTLE even though Defendant had an obligation to do so.

33.    Defendant made misrepresentations of material facts and omitted material facts concerning the offering of the membership interests in UC SEATTLE. Plaintiffs relied on such misrepresentations in deciding to invest in UC SEATTLE. But for such misrepresentations and material omissions, Plaintiffs would not have invested a cumulative sum of $300,000 in UC SEATTLE.

FIRST AMENDED ADVERSARY COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF
DEBT AGAINST HOWARD WU

34.    In sum, in the pitch to solicit the purchase of membership interests in UC SEATTLE by Plaintiffs, Defendant, by means of written and oral communications, made untrue statements of material facts and omitted to state material facts necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading, including, inter alia:

    a.    Materially misrepresented and omitted material facts concerning their credentials, experience, expertise, and capabilities in order to induce the trust and confidence of Plaintiffs and other investors and lenders;

    b.    Failed to disclose the default by EAGLEHT and acceleration thereafter of its Three Hundred and Forty-One Million Dollar (US$341,000,000.00) loan;

    c.    Materially misrepresented and omitted material facts concerning the completion dates for the offerings and the dates on which the Seattle Hilton would be sold to EAGLEHT;

    d.    Materially misrepresented and omitted material facts concerning raising the necessary funds from the offering of membership interests in order to purchase the Seattle Hilton;

    e.    Materially misrepresented and omitted material facts concerning the status of the investment, acquisition of the Seattle Hilton, and escrow account allegedly holding Plaintiffs' investment; and

    f.    Materially misrepresented and omitted material facts concerning the Preferred Returns Plaintiffs would receive under the Investment Agreement

## **Wu is An Alter Ego of UC Seattle**

35.    Plaintiffs are informed and believed that Defendant has so blatantly disregarded the corporate formalities between himself and UC Seattle that allowing him to seek protection from his fraudulent conduct by hiding behind UC Seattle would result in an injustice against this court and Plaintiffs. Plaintiffs are informed and believes that Defendant disregarded the corporate formalities by:

    a.    Transferring at least $1,940,000 from UC Seattle to Urban Commons, LLC,

1            a limited liability entity he controlled along with his partner Taylor Woods,

2            in 2020 despite a specific prohibition against transfers included in the UC

3            Seattle Offering Documents as alleged in ¶ 17 above.

4      a.   Subsequently transferring $513,500 of the aforementioned funds to his

5          personally controlled accounts in 2020, despite failing to remit Plaintiff's

6          Preferred Return Payments as alleged in ¶ 27 above and despite UC

7          Seattle's failure to acquire the Property as alleged in ¶ 25 above.

8      b.   Treating UC Seattle assets and funds as his own.

9      c.   Taking funds from UC Seattle and transferring them to his other controlled

10          Urban Common entities, in addition to his own personal use.

11     36.   Plaintiff is informed and believes that Defendant was one of two member

12 managers of Urban Commons, LLC, the limited liability entity that was contractually

13 appointed as the manager of the Property by the UC Seattle Offering Documents. Plaintiff

14 is further informed and believes that Plaintiff used his position as member manager of

15 Urban Commons, LLC and his position in UC Seattle to fraudulently transfer funds between

16 UC Seattle, Urban Commons, LLC and his personal accounts as alleged above.

17     37.   Further, Wu has already been declared a "fraudster" by another United States

18 Bankruptcy Court Judge from the District of Delaware i *In re EHT US1, Inc.* 633 B.R. 223.

19     1.   In his opinion, Bankruptcy Court Judge for the District of Delaware Judge

20          Christopher S. Sontchi stated:

> "Messrs. Woods and Wu are fraudsters. They fraudulently obtained a PPP loan on behalf of the Debtor without authority and absconded with the proceeds, leaving either the Debtor or the United States to pay back the lender. They were sued by the Debtor, and, after notice and a hearing, the Court entered summary judgment against them and their company and enjoined Defendants from dissipating their assets. In addition, the Court ordered a detailed accounting. Defendants have not provided a sufficient accounting and have baldly stated they intend to dissipate their assets." *Id* at 225

FIRST AMENDED ADVERSARY COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT AGAINST HOWARD WU

1

2

3        **<u>FIRST CLAIM FOR RELIEF</u>**

4    **(For Non-Dischargeability of Debt for False Pretenses, False Representation and/or**

5    **Actual Fraud Under 11 U.S.C. § 532(a)(2)(A) As To Plaintiffs' Investments In UC**

6        **Seattle Against Defendant WU)**

7    38. Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1

8        through 34 and reallege those allegations as if fully set forth herein.

9    39. Defendant incurred obligations to Plaintiffs by false pretenses, false representations,

10       and/or actual fraud.

11   40. Defendant misrepresented essential material facts.  As part of the UC Seattle

12       Offering, Defendant promised that:  (i) UC SEATTLE would not use or apply the

13       purchase price until the necessary funds from the offering had been raised; (ii) the

14       funds raised for UC Seattle Offering would be used to invest in  UC SEATTLE

15       which would acquire, own, operate, and eventually sell the Seattle Hilton; (iii) the

16       purchase price for the Hilton Seattle would be deposited into interest-bearing secure

17       bank accounts; (iv) if the Subscription Agreement was terminated, all funds raised

18       would be returned to the investors, together with any interest remaining on such

19       funds following the payment of all costs and expenses; (v) UC SEATTLE would

20       obtain  a loan in an approximate aggregate amount of $70 million to acquire the

21       Seattle Hilton; and (vi) the Seattle Hilton would be sold to EAGLEHT.

22   41. At the time Defendant made this representation, Defendant knew that such

23       representations were false, as Defendant were well aware that: (i) EAGLEHT was

24       not performing well, (ii) EAGLEHT had defaulted on a $341 million facility loan,

25       (iii) the default dated back to December 2019, (iv) Defendant and his associates were

26       under investigation by the Monetary Authority of Singapore ("MAS") and the

27       Singapore Exchange for suspected breaches of disclosure requirements under

28       Section 203 of the Singapore Securities and Futures Act, and breaches of regulations

and listing rules in relation to EAGLEHT SP; and (v) trading of EAGLEHT SP's units had been suspended.

42. Defendant made such representations to induce Plaintiffs into investing in UC SEATTLE.

43. In reliance on such representations, Plaintiffs invested in UC SEATTLE.

44. Plaintiffs were harmed by Defendant's concealment in that had important facts been disclosed, Plaintiffs would have taken steps, including not investing in UC SEATTLE pursuant to the UC Seattle Offering.

45. The intentionally fraudulent acts of Defendant were undertaken in a malicious manner justifying an award of punitive damages against Defendant and in favor of Plaintiff.

46. Based on the facts alleged herein, Plaintiffs request that Defendant's obligations to Plaintiffs be found non-dischargeable in its entirety pursuant to 11 U.S.C. § 523(a)(2)(A) as the debts owed to Plaintiffs were obtained by false pretense, false representation and/or actual fraud.

## **SECOND CLAIM FOR RELIEF**

### **(For Non-Dischargeability Based on Willful and Malicious Injury Under 11 U.S.C. § 523(a)(6) As To Plaintiffs' Investments In UC Seattle Against Defendant WU)**

47. Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1 through 43 and reallege those allegations as if fully set forth herein.

48. Defendant, by making representations to Plaintiffs, inflicted willful and malicious injury to Plaintiffs. Among other things, Defendant knew that such representations were false, as Defendant were well aware that: (i) EAGLEHT was not performing well, (ii) EAGLEHT had defaulted on a $341 million facility loan, (iii) the default dated back to December 2019, (iv) Defendant and his associates were under investigation by the Monetary Authority of Singapore ("MAS") and the Singapore Exchange for suspected breaches of disclosure requirements under Section 203 of

- 12 -

the Singapore Securities and Futures Act, and breaches of regulations and listing rules in relation to EAGLEHT SP; and (v) trading of EAGLEHT SP's units had been suspended.

49. Defendant misrepresented essential material facts.   As part of the UC Seattle Offering, Defendant promised that:  (i) UC SEATTLE would not use or apply the purchase price until the necessary funds from the offering had been raised; (ii) the funds raised for UC Seattle Offering would be used to invest in  UC SEATTLE which would acquire, own, operate, and eventually sell the Seattle Hilton; (iii) the purchase price for the Hilton Seattle would be deposited into interest-bearing secure bank accounts; (iv) if the Subscription Agreement was terminated, all funds raised would be returned to the investors, together with any interest remaining on such funds following the payment of all costs and expenses; (v) UC SEATTLE would obtain  a loan in an approximate aggregate amount of $70 million to acquire the Seattle Hilton; and (vi) the Seattle Hilton would be sold to EAGLEHT.

50. Defendant's conduct was wrongful, was without just cause or excuse, and necessarily caused injury to Plaintiffs.

51. Plaintiffs were damaged as a result of Defendant's conduct.

52. The actions of Defendant were undertaken in a malicious manner justifying an award of punitive damages against Defendant and in favor of Plaintiffs.

53. Based upon the facts alleged herein, Plaintiffs request that Defendant's obligations to Plaintiffs be found non-dischargeable in its entirety pursuant to 11 U.S.C. § 523(a)(6).

### THIRD CLAIM FOR RELIEF

**(For Non-Dischargeability of Debt for False Pretenses, False Representation and/or Actual Fraud Under 11 U.S.C. § 532(a)(2)(A) As To Plaintiff Chiang's Investment In UC Crenshaw Against Defendant WU)**

54. Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1

through 50 and reallege those allegations as if fully set forth herein.

55. Defendant incurred obligations to Mr. Chiang by false pretenses, false representations, and/or actual fraud.

56. Defendant misrepresented essential material facts. On or about March 8, 2021, Defendant misrepresented to UC CRENSHAW investors, including Mr. Chiang that UC CRENSHAW still owned the Property and that development plans for the Property were ongoing including the drawing of architectural designs and zoning plans.

57. Plaintiffs are informed and believe and on that basis allege that at the time these representations were made by Defendant, Defendant knew these representations to be false and made said representations with the intent to deceive Mr. Chiang as at the time these representations were made on March 8, 2021, Defendants no longer owned the Property as a result of selling the Property to 1009 Crenshaw LP back on September 17, 2020.

58. Plaintiffs are informed and believe and on that basis allege that at the time Defendant misrepresented to Mr. Chiang that UC CRENSHAW still owned the Property, Defendant did so in order to defraud Mr. Chiang out of the percentage of the $4,000,000 sale proceeds he was entitled to under the UC Crenshaw Operating Agreement.

59. Plaintiffs are informed and believe and on that basis further allege that at the time Defendant misrepresented to Mr. Chiang that UC CRENSHAW still owned the Property, Defendant did so so that Defendant and his cohorts could keep the $4,000,000 sale proceeds for themselves and in order to avoid returning to Mr. Chiang his $360,000 investment in UC CRENSHAW.

60. Defendant made such representations about UC CRENSHAW still owning the Property in order to induce Mr. Chiang into keeping his $360,000 investment in UC CRENSHAW.

61. In reliance on the representation that UC CRENSHAW still owned the Property and

- 14 -

development plans were ongoing, Mr. Chiang kept his $360,000 investment in UC
CRENSHAW.

62. Mr. Chiang was harmed by Defendant's concealment in that had the important fact
that UC CRENSHAW no longer owned the Property, but had in fact sold it five (5)
months prior to the March 8, 2021 Zoom meeting, Mr. Chiang would have
immediately taken steps to recoup his $360,000 investment sum and the percentage
of the $400,000 sale proceeds he was entitled to under the UC Crenshaw Operating
Agreement. What Mr. Chiang would not have done is allowed Defendant to keep his
full $360,000 investment.

63. The intentionally fraudulent acts of Defendant were undertaken in a malicious
manner justifying an award of punitive damages against Defendant and in favor of
Mr. Chiang.

64. Based on the facts alleged herein, Plaintiffs request that Defendant's obligations to
Mr. Chiang be found non-dischargeable in its entirety pursuant to 11 U.S.C. §
523(a)(2)(A) as the debts owed to Mr. Chiang were obtained by false pretense, false
representation and/or actual fraud.

## FOURTH CLAIM FOR RELIEF

**(For Non-Dischargeability Based on Willful and Malicious Injury Under 11
U.S.C. § 523(a)(6) As To Plaintiff Chiang's Investment In UC Crenshaw Against
Defendant WU)**

65. Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1
through 61 and reallege those allegations as if fully set forth herein.

66. Defendant, by making representations to Mr. Chiang on March 8, 2021 that UC
CRENSHAW still owned the Property, inflicted willful and malicious injury to him.
Among other things, Defendant knew that such representations were false, as at the
time Defendant represented to Mr. Chiang that UC CRENSHAW still owed the
Property and that development plans were ongoing, Defendant was well aware that:

- 15 -

(i) development plans for the Property were not ongoing as five (5) prior, on or about September 17, 2020, UC CRENSHAW had sold the Property to Property to 1009 Crenshaw LP, (ii) the Property was sold for $4,000,000, and (iii) Defendant and his cohorts kept the entire $4,000,000 for themselves.

67. Defendant's conduct was wrongful, was without just cause or excuse, and necessarily caused injury to Mr. Chiang.

68. Mr. Chiang was damaged as a result of Defendant's conduct.

69. The actions of Defendant were undertaken in a malicious manner justifying an award of punitive damages against Defendant and in favor of Mr. Chiang.

70. Based upon the facts alleged herein, Plaintiffs request that Defendant's obligations to Mr. Chiang be found non-dischargeable in its entirety pursuant to 11 U.S.C. § 523(a)(6).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Michael Chung-Hou Chiang and Agnes Shene Hwa Chin ("Plaintiffs") pray for judgment against Defendant Howard Wu, as follows:

### **ON THE FIRST CLAIM FOR RELIEF:**

1.     For judgment that the debts owed by Defendant to Plaintiffs are non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A);

2.     For judgment against Defendant in a sum of at least $300,000.00, plus pre-judgment interest and interest, as general and special damages to proven at trial; and

3.     For punitive damages.

### **ON THE SECOND CLAIM FOR RELIEF:**

4.     For judgment that the debts owed by Defendant to Plaintiffs are non-dischargeable pursuant to 11 U.S.C. § 523(a)(6);

5.    For judgment against Defendant in a sum of at least $300,000.00, plus pre-judgment interest and interest, as general and special damages to proven at trial; and

6.    For punitive damages.

**ON THE THIRD CLAIM FOR RELIEF:**

7.    For judgment that the debts owed by Defendant to Mr. Chiang are non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A);

8.    For judgment against Defendant in a sum of at least $360,000.00, plus pre-judgment interest and interest, as general and special damages to proven at trial; and

9.    For punitive damages.

**ON THE FOURTH CLAIM FOR RELIEF:**

10.    For judgment that the debts owed by Defendant to Mr. Chiang are non-dischargeable pursuant to 11 U.S.C. § 523(a)(6);

11.    For judgment against Defendant in a sum of at least $360,000.00, plus pre-judgment interest and interest, as general and special damages to proven at trial; and

12.    For punitive damages.

**FOR ALL CAUSES OF ACTION**

13.    For costs of suit incurred herein;

14.    For reasonable attorneys' fees incurred by Plaintiffs, to the extent allowed by law; and

15.    For such other and further relief as the Court may deem just and proper.

FIRST AMENDED ADVERSARY COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF
DEBT AGAINST HOWARD WU

1 | DATED: May 24, 2022          GARCIA RAINEY BLANK & BOWERBANK LLP

2

3

4 |                          By _____

5 |                                   NORMA V. GARCIA
                                     JEFFREY M. BLANK
6 |                                   Attorneys for Plaintiffs
                                Michael Chung-Hou Chiang and
7 |                              Agnes Shene Hwa Chin

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED ADVERSARY COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF
DEBT AGAINST HOWARD WU

1

## **DEMAND FOR JURY TRIAL**

2

3          Pursuant to Rule 9015(a) of the Federal Rules of Bankruptcy Procedure, Plaintiffs

demand a jury trial on all claims and causes of action so triable which are alleged herein.

4

Plaintiffs consent to a jury trial conducted by the bankruptcy court.

5

6

7    DATED:  May 24, 2022          GARCIA RAINEY BLANK & BOWERBANK LLP

8

9

10

11                                          By _____

12                                                    NORMA V. GARCIA
                                                   JEFFREY M. BLANK
13                                                 Attorneys for Plaintiffs
                                            Michael Chung-Hou Chiang and
14                                          Agnes Shene Hwa Chin

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 19 -

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
695 Town Center Dr. Ste. 540
Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled (*specify*): FIRST AMENDED ADVERSARY COMPLAINT
_____
_____
_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 06/21/2022_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
United States Trustee (LA): ustpregion16.la.ecf@usdoj.gov
Heide Kurtz (TR): trustee@hkurtzco.com
Eric Bensamochan: eric@eblawfirm.us

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) __06/21/2022_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
Hon. Ernest M. Robles
United States Bankruptcy Court - Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1560 / Courtroom 1568 Los Angeles, CA 90012
Howard Wu
13600 Bayliss Rd.
Los Angeles, CA 90049

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

06/21/2022    Gianni Eason
_____     _____
Date         Printed Name                                Signature

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**